## BALTIMORE CITY COURT.

Filed May 22, 1907.

CONSOLIDATED GAS COMPANY
VS.
MAYOR AND CITY COUNCIL OF BALTIMORE.

*Edgar H. Gans* and *W. Calvin Chesnut* for Gas Company.

*Edgar Allan Poe* and *Sylvan H. Lauchheimer* for the Mayor and City Council.

STOCKBRIDGE, J.—

The question now before the court for determination is, what is the value in connection with mains and pipes, of the easement which the Gas Company enjoys in the streets and highways of Baltimore City. Incidentally, in view of the previous litigation, it may be said that the method of the ascertainment of such value is involved. This is true to the extent that the valuation must be made in conformity with some plan or course of reasoning or deduction, so that it shall be apparent that the valuation of the easement is not such as to include all the value of the franchises enjoyed by the company, but the method can not be said to be at issue as to conforming to any standard or rule established by law, for there is none such.

There are a few matters in the case which are not disputed, and it will

facilitate the consideration to first eliminate these. At the time when the assessment which is the subject of this appeal was made, the Gas Company was already assessed, and paid taxes upon 79,000 services, at $2 each, or $158,000; and upon 451.92 miles of mains assessed at $1,127,035; in the aggregate $1,285,035, and it is conceded by the company that there should be added to this certain new construction of a value of $111,886— thus giving a total value of constructed lines of $1,396,921.

The appeal in this case is one by the Consolidated Gas Company to review, not an original assessment upon the construction, cost of mains and services, but an additional assessment of $6,000,000, upon what is designated the easement enjoyed by the company in the streets. There is no appeal on the part of the city, but under the provisions of Section 170 of the City Charter, the court is empowered to increase or diminish the assessment as to it shall seem proper from the evidence adduced before it, and therefore in the order to be signed there will be an increase on construction account of $111,886.

In the attempts to assess the company upon its easements, in the previous case and in this case, three methods may be said to have been suggested, either by the city or by the Gas Company, or by experts called to sustain the valuation made by the Appeal Tax Court, and all of these have been, by the Court of Appeals, held improper. They were briefly, first, a valuation based upon the total property of the company of whatsoever kind, deducting therefrom the amount of assessed value upon which taxes were already paid, and thus in effect was under the name of taxing an easement a valuation for taxation of both an easement and a franchise.

The second of the methods was that of a capitalization of the earnings of the company, and like the previous, the effect of this was to tax both an easement and franchise privilege under the one head of easements. The third method, a method suggested by the Gas Company, was one based upon a real estate valuation per square foot of land in close proximity to that where the easement was enjoyed.

This was objectionable for two reasons: First, because the company could not acquire the actual property in which the easement was enjoyed, the real estate which constituted the bed of the highway; and, secondly, as pointed out by the Court of Appeals, that there might be, and frequently were, times when the right of easement under a highway would be of far greater value than the land itself abutting on such highway would be.

It is now objected that this court can make no valuation because there is no standard of measurement of value, and that any amount which may be named will be arbitrary. It is true that there is no method for the determination of value prescribed by any statute, and it is also true that in one sense any valuation whatever placed upon this right of the company is an arbitrary ascertainment; but it is no more true than it is of every assessment of property for purposes of taxation that the value assigned to it is arbitrary, even when fixed as the result of the exercise of the best skill and judgment which can be brought to bear by the individual or tribunal which places such valuation upon the property.

It may be possible, however, by comparison or analogy, to reach an approximation of value which will be neither unjust to the individual or corporation enjoying the right of easement, nor to the municipality from which such right is derived.

Four analogies of this character have been suggested to the court, namely, the charge made by the city for a vault or area constructed under some portion of the abutting highway, and designed to be used in connection with the adjacent property. Second, the charge made to individual holders of a right from the city to lay a sewer drain or pipe to connect a given piece of property with a public sewer. Third, the charge or rentals reserved by ordinance of the Mayor and City Council of Baltimore, for the right to place in the highways of the city certain pipes or conduits designed to convey steam or hot or cold air from a central station to consumers in other portions of the city, and. fourth, the similar charge or rental imposed upon the Chesapeake and Potomac Telephone Company for the right to lay its conduits for wires in the streets of the city, connecting its subscribers with a central exchange.

With regard to the first of these, the court is unable to see any very close analogy, and especially is this true when the testimony tends to show that such a charge is based upon a square foot valuation of real estate of adjacent property, which has already been held to be an improper method of valuation; but besides this, there are a number of important points in which any analogy is wanting.

If we turn to the charge made for the construction of sewers we shall find a different rate of charge imposed at different times, and dependent apparently upon the conditions imposed, and especially the length of term for which the right was granted.

Thus Mr. Freeman testifies that the charge was formerly $1 per linear foot, and apparently when this charge was imposed, there was no specific term limited during which the right was to be enjoyed. He further testified to a present charge of fifty cents per linear foot, and that under this charge the permission granted was one revocable at the pleasure of the Mayor and City Council—that is, terminable at the will of the party by whom the permit was given.

If we seek to apply this to the Gas Company, and assume that it is proper to value as an easement for purposes of taxation, both mains and services, we must treat the services in the same manner as the revocable permit for the sewers, since it is practically optional with either the Gas Company or the consumer at any time they see fit to discontinue the use of any particular service, and services would therefore be properly computed on the basis of fifty cents per linear foot, rather than $1.

It is agreed in this case that there are 480 miles of mains, and upon the basis of the sewer charge for these of $1 per linear foot, there would be a valuation of $2,534,400, and upon services assuming the number of services at 79,000, the number which the Gas Company has paid taxes upon without objection, an amount of $987,500, or a total easement valuation of $3,521,900.

It must be borne in mind, however, that the charge of $1 per linear foot, is not the sole charge in the case of sewers, but there is an additional lump charge of $100, said to be for the right to tap the city sewer. But for whatever purpose the charge is made, it is a sum to be paid by the individual putting down the sewer pipe, and should therefore be distributed proportionally over the length of the line of the sewer, and the effect of this would be to increase the charge to some amount in excess of $1 per linear foot, up to 51.50 per foot, according to the length of the particular sewer. If this basis be applied to the Gas Company, and for the moment limiting the valuation to the easement for the mains, would indicate a valuation of between $2,534,400 and $3,801,600.

The analogy between the sewer charge made by the city and the easement of the Gas Company is not complete. Such permits are seldom granted and the sewers laid for a distinctly gainful purpose; and the fact that the construction of such sewers may tend to promote the public health, and therefore, to be encouraged by a lower charge, may well be factors considered in regulating the charge made by the city, but the figures may be useful for purposes of comparison with other methods of arriving at a valuation, and as a check against error, either of under or over valuation.

When the attempt is made to compare the charges made for the Chesapeake and Potomac Telephone conduits and the Heating and Refrigerating conduits, there are certain striking points of difference between them. In the first place the rental prescribed by ordinance in the case of the telephones is practically seven cents a linear foot, and that for the Heating and Refrigerating conduits four and three-quarter cents per foot, or a difference of two and one-quarter cents per foot, which is a very considerable item when there is a large mileage.

Nor is this the only difference; in the case of the Heating and Refrigerating conduits, the ordinance expressly relieves service pipes from any charge, the rental being placed solely upon the mains, while in the case of the Telephone conduits, although the evidence is not entirely clear, it would appear that service connections, as well as mains, were included in ascertaining the mileage upon which the rental should be charged.

It is also in evidence that there has been no assessment for construction upon the conduits of the Heating and Refrigerating Company, and that there has been such assessment in the case

of the Telephone Company. The mere fact that the assessors have omitted to assess the Heating and Refrigerating Company for their underground construction, if it was an assessment proper to be made, cannot operate to relieve the present company from an assessment made on that account.

Now noting these differences, let us apply the figures of these rentals to the Gas Company, with respect to its mains only, excluding the services and the services may properly be excluded for the reason that it is impossible to distinguish with regard to them, and say whether the easement of the service pipe is not one of the consumer rather than the company, while in the case of the mains no such doubt can exist. The service pipe is in a certain sense a joint easement of the consumer and the company, because either can discontinue its use at his or its option.

On the basis of seven cents a foot (the rental imposed on the Telephone Company), the annual charge against the Gas Company would be $177,408, and on the basis the four and three-quarter cents (the rental imposed on the Heating and Refrigerating Company), the charge would be $120,000, or if, as seems fair and reasonable an average between these two rates, of seven cents and four and three-quarter cents, is taken, it will be approximately five and three-quarter cents per linear foot, or for 480 miles, an annual charge of $145,728, and this as it appears to me would be a reasonable sum upon a rental basis, which is what the C. & P. Telephone ordinance, and the Heating and Refrigerating ordinances practically are.

Treating this as a rental to determine the valution of the property upon which the rental is charged, there must be a capitalization of that rental, and the question arises, at what rate such capitalization should be made.

Counsel for the Gas Company suggested eight per cent., the City Solicitor two per cent. The eight per cent. capitalization is a capitalization frequently employed by persons dealing in real estate and applicable to the rentals of dwellings or warehouse property, in connection with which allowance must always be made for repairs, possible loss of rent, insurance, and it may be a few other contingencies, none of which have any relevancy to the case now under consideration.

A capitalization at two per cent. undoubtedly errs in the other direction, the only reason which can be advanced for such capitalization is the fact that the municipal tax rate is about that sum. Ground rents at the present day are selling in the market of this city upon a capitalization ranging from three per cent. for well secured irredeemable rents, to a much lower figure where they are redeemable, or uncertainly secured. But in such capitalization the fact that the money invested in the rent is free from taxation is an important consideration, and allowance is made on this account of from one to two per cent.

The city of Baltimore is at the present time borrowing money at the rate somewhere between three and a half and four per cent., and if this estimated annual rental be capitalized at the rate of four per cent., we shall have an indicated value for the easement of $3,643,200, or if at five per cent., of $2,914,540.

Upon careful consideration, taking into account the character of the right enjoyed as compared with other similar rights, and mindful of the fact that the rights of the Gas Company in the streets consists of three elements, the construction, the easement, and a franchise, it has seemed to me just to capitalize the valuation of an annual charge determined in the manner before indicated upon the basis of four and one-half per cent., amounting to $3,238,400.

Such rate of capitalization seems fair in comparison with the capitalization of ground rents, due allowance being made for the non-taxable character of the latter: it further seems to the court just in view of the rate at which the city is able to borrow money and the result reached is not so far from that indicated by adopting the rate of sewer charges, as to indicate that any serious error has been committed.

An order will, therefore, be signed reducing the additional assessment made by the Appeal Tax Court from $6,000,000 to $3,350,228, of which last-named sum, $111,886 is for the new and conceded additional construction, and $3,238,400 for the easement enjoyed by the company for its 480 miles of mains in the streets and highways of the city.